IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROGER KIM FAIRCHILD, )<br>    )<br>          Petitioner, )<br>    )<br>    v. )<br>    )<br>LARRY WRIGHT, Warden, South )<br>Idaho Correctional Institution, )<br>    )<br>          Respondent. )<br>_____ ) | Case No. CV-99-338-S-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

The Court previously dismissed several claims in Petitioner's Habeas Corpus Petition as procedurally defaulted.  Currently before the Court is Respondent's Motion for Summary Judgment over Claims 1-5, 9 and 10.  After reviewing the parties' briefing and the record, the Court has determined that it will resolve this matter on the written record without oral argument.  *See* D. Idaho L. Civ. R. 7.1(d).

For the reasons set forth more fully herein, the Court finds that there are no genuine issues of material fact and that Respondent is entitled to judgment as a matter of law.  This case will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Memorandum Decision and Order - 1

In late June 1989, a confidential informant (CI 539) acting under the supervision of police officers went into Petitioner's trailer home and received a bindle of cocaine.  The police thoroughly searched CI 539 and monitored the entire transaction through a "body wire."  Based on the delivery of cocaine, and with additional information provided by another confidential informant (CI 537), Officer Jeff Alexander prepared an affidavit for a search warrant of the trailer and the vehicles registered to Petitioner.

The search warrant was issued and executed the next morning.  Officers discovered large quantities of cocaine and marijuana, paraphernalia, records, and items indicating Petitioner's ownership and residency.  Petitioner, the only occupant at the time of the search, was arrested.  Based upon the items seized, the State charged him with one count of possession of cocaine with intent to deliver and one count of possession of more than three ounces of marijuana.

At trial, defense counsel claimed in his opening statement that the bindle of cocaine that CI 539 had given to police officers did not contain Petitioner's fingerprints.  Outside the presence of the jury, the prosecutor informed counsel and the court that this assertion was incorrect, and that the bindle to which counsel had referred was not the one that CI 539 had given to the police but was instead some other bindle that was found during the search.  Defense counsel requested a

**Memorandum Decision and Order - 2**

mistrial, which was granted.

Before the second trial, Petitioner filed a motion to dismiss on the ground that a retrial would violate the Double Jeopardy Clause of the Constitution.  This motion was denied.  The second jury found Petitioner guilty as charged, and the court sentenced him to an aggregate controlling term of 35 years in prison, with the first 12 years fixed.  He was also fined a total of $35,000.

Petitioner appealed to the Idaho Court of Appeals, which affirmed, and the Idaho Supreme Court declined to review the case.  *State v. Fairchild*, 829 P.2d 550 (Idaho Ct. App. 1992) (*Fairchild I*).  His subsequent post-conviction and state habeas actions were unsuccessful.  *Fairchild v. State*, 912 P.2d 679 (Idaho Ct. App. 1996) (*Fairchild II*).

In 1999, Petitioner initiated the current federal habeas action, raising twenty claims for relief.  This Court dismissed the Petition as untimely, but that decision was later reversed by the Ninth Circuit Court of Appeals.  (Docket No. 35.)  On remand, the Court determined Petitioner was entitled to equitable tolling of the limitations period, making his Petition timely.  (Docket No. 52.)

Pursuant to the Court's scheduling order, Respondent filed a Motion for Partial Summary Dismissal, arguing that several claims in the Petition had not been raised in state court at the correct time or in the correct manner and were

**Memorandum Decision and Order - 3**

procedurally defaulted.  (Docket No. 59.)  The Court granted the Motion in part

and denied it in part, dismissing Claims 6-8 and 11-20.  (Docket No. 64.)

Respondent has now filed an Answer to the Petition and a Motion for

Summary Judgment over the remaining claims.  Petitioner has responded to the

Motion, and the matter is ripe for a decision.

## STANDARD OF LAW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

is appropriate where "there is no genuine issue as to any material fact and the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Federal Rules of Civil Procedure apply to habeas corpus actions except where

application of the rules would be inconsistent with established habeas practice and

procedure.  *See* Rule 11 of the Rules Governing Section 2254 Cases.  In general,

summary judgment is not inconsistent with habeas practice.  *See Blackledge v.

Allison*, 431 U.S. 63, 80-81 (1977).  But a motion for summary judgment in a

habeas case must be reviewed in light of the provisions of the 1996 Antiterrorism

and Effective Death Penalty Act ("AEDPA").

AEDPA requires a federal court to substantially defer to reasonable state

court adjudications on the merits of constitutional claims.  Accordingly, an

application for writ of habeas corpus shall not be granted unless the state court's

**Memorandum Decision and Order - 4**

adjudication of a claim either:

1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)&(2).

Section 2254(d)(1) contains a "contrary to" and an "unreasonable application" clause, each with an independent meaning.  To show that a decision is contrary to federal law, a petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent."  *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).  Under the unreasonable application clause, the petitioner must establish that the state court was "unreasonable in applying the governing legal principle to the facts of the case."  *Id*. at 413.  A federal court cannot grant relief simply because it concludes in its independent judgment that the state court decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003);

**Memorandum Decision and Order - 5**

*Bell v. Cone*, 535 U.S. 685, 694 (2002).  Although the controlling federal law is derived from the holdings of United States Supreme Court cases, a federal court may look to lower court cases for persuasive guidance as to what is a reasonable interpretation of the law.  *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

Section 2254(d)(2) is applicable to a review of a state court's factual findings.  Under that subsection, the petitioner must show that the state court's decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding."  *Id*.  If a petitioner wishes to rebut state court findings of fact by extrinsic evidence, he must come forward with clear and convincing evidence that the finding was incorrect.  28 U.S.C. § 2254(e)(2).

With these standards in mind, the Court now turns to the remaining claims in the Petition.

## DISCUSSION

1.   <u>Double Jeopardy (Claim 1)</u>

In his first claim, Petitioner contends that his constitutional right against double jeopardy was violated when he was retried because the prosecutor had provoked defense counsel into requesting a mistrial during the first jury trial.

**Memorandum Decision and Order - 6**

Specifically, Petitioner alleges that the prosecutor knowingly failed to correct defense counsel's misapprehension about which bindle of cocaine the defense expert had tested for fingerprints.  Petitioner claims that the prosecutor needed more time to muster his case after he lost certain documentary exhibits.

As a general rule, the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Fourteenth, does not prohibit a retrial when the court has declared a mistrial at the defendant's request.  *United States v. Dinitz*, 424 U.S. 600, 607-08 (1976).  A narrow exception to this rule exists when the prosecutor has engaged in misconduct with the intent to provoke the defendant into requesting a mistrial.  *Oregon v. Kennedy*, 456 U.S. 667, 675 (1982).  The prosecutor's intent is a question of fact that must be inferred from the objective facts and circumstances of the case.  *Kennedy*, 456 U.S. at 675.

On direct appeal in this case, the Idaho Court of Appeals recognized and applied the rule in *Kennedy*.  *Fairchild I*, 829 P.2d at 554.  It found substantial competent evidence in the record to support the trial court's determination that the "mixup in the delivery of the proper bindle was the 'result of a simple mistake,' which at worst amounted to carelessness on the part of the prosecutor," and that defense counsel shared in the responsibility for the mistake because of his late request to test the evidence.  *Id*.  The court also affirmed the lower court's decision

**Memorandum Decision and Order - 7**

that the prosecutor was not motivated by the loss of documentary exhibits. *Id.*

The state court's decision to deny relief essentially turned on the dispositive factual finding that the prosecutor lacked the intent to provoke a mistrial, a finding that is not unreasonable in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Petitioner has not demonstrated any flaws in the state court's factfinding process. In the district court, the parties submitted affidavits in support of their respective positions, after which the trial court issued its initial decision. Petitioner filed a motion to reconsider, and the court held an evidentiary hearing, at which several witnesses testified, before denying the motion. Ample evidence developed during this process supports the determination that the prosecutor did not intend to provoke a mistrial, and Petitioner has proffered no evidence in this proceeding in an effort to rebut that finding. *See* 28 U.S.C. § 2254(e)(1) (state court findings of fact are rebutted only on a showing of clear and convincing evidence).

Nor is the state court's legal conclusion contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). The court was aware that *Kennedy* set out the controlling law, and it did not confront a set of facts materially indistinguishable from that case and yet arrive at a different result. Once the court determined that the prosecutor did not intend to provoke a mistrial, it did not unreasonably apply the holding in *Kennedy* that, absent such an intent, a

**Memorandum Decision and Order - 8**

defendant's Fifth Amendment right against double jeopardy is not implicated.

*Kennedy*, 456 U.S. at 679.  Therefore, Petitioner is unable to satisfy the standards

in 28 U.S.C. § 2254(d), and this claim will be denied.[1]

      2.    <u>Disclosure of the Confidential Informants (Claim 2)</u>

Petitioner next alleges that his rights to confrontation and due process of law

were violated when the trial court allowed the prosecution to withhold the

identities of CI 537 and CI 539 from the defense throughout the criminal matter.

For the reasons that follow, the Court concludes that Petitioner did not establish a

need for the informants' identities in state court that outweighed the State's

privilege to shield them, and this claim will also be denied.

      A.    <u>Legal Standards</u>

In *Rovario v. United States*, 353 U.S. 53 (1953), the Supreme Court

recognized that the government generally holds an "informer's privilege" allowing

it to shield a confidential informant's identity from the defense.  This privilege is

based on legitimate law enforcement concerns, such as encouraging citizens to

report criminal activity to the police without fear of reprisal.  *Id*. at 59.  But the

---

[1] Petitioner also claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel, but he has provided no factual support to show how his right to counsel was violated as a result of the confusion surrounding the bindle and the subsequent mistrial.  Therefore, the Sixth Amendment aspect of this claim is conclusory will not support relief.  *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995).

**Memorandum Decision and Order - 9**

*Rovario* Court found that the privilege is not absolute and that it must give way when the contents of the informant's communication or his identity is relevant and helpful to the defense of the accused.  *Id.* at 60-61.

The Supreme Court later applied *Rovario* to a situation in which the defendant demanded to know a tipster's identity as part of his challenge to the probable cause supporting his arrest.  *McCray v. Illinois*, 386 U.S. 300 (1967). The Court concluded that because it had found in *Rovario* that a defendant did not have an absolute right to disclosure at trial, it necessarily followed that the defendant did not have an absolute right under the Sixth and Fourteenth Amendments to disclosure when the issue is a preliminary one, such as probable cause to support an arrest or a search.  *Id.* at 312.

In a case decided after *McCray*, however, the Court held that a defendant has a Fourth Amendment right to contest the veracity of the information used in an affidavit in support of a search warrant application.  *Franks v. Delaware*, 438 U.S. 154 (1978).  To be entitled to a full evidentiary hearing on such a claim, the defendant bears an initial burden to make a "substantial preliminary showing" that the affiant intentionally or recklessly made false statements of fact in the affidavit and those statements were material to the finding of probable cause.  *Id*. at 155-56. Thus, when the identity of a confidential informant may be relevant to proving

**Memorandum Decision and Order - 10**

materially false statements, the framework established in *Franks* can put the

defendant in the difficult situation of having the right to challenge the validity of a

warrant without the means to do so, unless the informant is disclosed.

　　　　The Court of Appeals for the Ninth Circuit has addressed this issue and has

determined that the reasoning of *Rovario*,  *McCray*, and *Franks* will require a

balancing of the defendant's need to challenge the veracity of the affidavit with the

prosecution's interest in confidentiality.  *United States v. Kiser*, 716 F.2d 1268,

1271 (9th Cir. 1983); *United State v. Napier*, 436 F.3d 1133, 1136-37 (9th Cir.

2006).  The defendant must still come forward with specific allegations that

indicate which portions of the affidavit he believes are false, accompanied by a

detailed offer of proof, in order to meet the preliminary showing requirement.

*Kiser*, 716 F.2d at 1271-72 (citations omitted).  If such a showing has been made,

the trial court then has the discretion to hold confidential proceedings, including *ex

parte* or *in camera* hearings, but the defendant must be given some opportunity to

carry his burden to show that the material in the affidavit is untrue.  *Id*. at 1273-74.

**Memorandum Decision and Order - 11**

B.    Analysis

In the present case, the Idaho Court of Appeals cited *Rovario* and *McCray* and rejected Petitioner's argument that disclosure of CI 537 and CI 539 was necessary to assist him in preparing for his defense at trial.  *Fairchild I*, 829 P.2d at 555-56.  This decision squares easily with clearly established federal law. Petitioner was charged with the possession of controlled substances, not sale or delivery, and the confidential informants were not participants in the charged offenses.  Instead, their roles were limited to assisting law enforcement officers in developing probable cause for the search warrant.  Petitioner has not explained how the disclosure of non-testifying confidential informants would have been relevant and helpful to his defense.[2]

The slightly closer question is whether disclosure was necessary at a pretrial stage so that Petitioner could support his *Franks* challenge to the veracity of the evidence supporting probable cause for the warrant.  In finding no merit to this argument, the Idaho Court of Appeals relied on *McCray* and concluded that "where the determination of probable cause is at issue, nondisclosure of the informant's

---

[2]  Although it is true that the State was required to prove that Petitioner intended to deliver the cocaine he possessed, to meet its burden the State did not present any evidence connected to the initial transaction with CI 539 or any other evidence provided by the confidential informants.  Rather, to show Petitioner's intent to deliver, the State relied on the quantity of drugs, records, packaging materials, cutting agents, cash, and weapons found in Petitioner's home.

**Memorandum Decision and Order - 12**

identity is not a violation of [Petitioner's] constitutional rights." *Fairchild I*, 829 P.2d at 555-56. While it is true that the Supreme Court held that a defendant does not have an absolute right to disclosure at an early stage, it did not hold that disclosure would never be required regardless of the circumstances.

In any event, this Court concludes that even if the state court did not fully recognize and apply the correct federal rule, Petitioner would still be unable to prevail. *See Cooperwood v. Cambra*, 245 F.3d 1042, 1046 (9th Cir. 2001) (if a state court applies an incorrect rule of law, then the federal court must review the claim *de novo*). Simply put, Petitioner did not make a sufficient preliminary showing that the information supplied by Officer Alexander to obtain the warrant was materially false or that the informants could provide relevant testimony that would prove such false statements.

Petitioner's primary claim in support of disclosure was that he never "sold" drugs to CI 539, and that, as a result, Officer Alexander incorrectly alleged in his search warrant affidavit that a "controlled buy" had occurred. *State's Lodging A-1*, pp. 45-46, 181-83. Petitioner was able to question Officer Alexander extensively on this matter at a pretrial evidentiary hearing, at which Alexander admitted that the term "controlled buy" was not technically correct because no money had changed hands during the transaction. *State's Lodging A-6*, pp. 304-

**Memorandum Decision and Order - 13**

310.  Despite this admission, the state court found that Alexander's misuse of the term was not material to the finding of probable cause because the evidence showed that cocaine had at least been *delivered* to CI 539.  *State's Lodging A-2*, pp. 261-62.  Petitioner did not come forward with any evidence–either in his offers of proof or at the evidentiary hearing–that Officer Alexander had lied about that aspect of the transaction.

To a lesser degree, Petitioner alleged that he had a reasonable belief about CI 539's identity, and, if he were proven correct, she was a known drug user with a past relationship with him who had been arrested and was now working with law enforcement.  He also claimed that she later left the area with one of the detectives who had been working on the case.  *State's Lodging A-1*, pp. 45-46, 181-83.

Petitioner did not expressly challenge the veracity of Alexander's affidavit based on these facts, but presumably he believes that Alexander intentionally or recklessly omitted from the affidavit the information about CI 539's background. Even if true, and further assuming that Petitioner could have proven his allegations if the informant had been produced, the undisputed circumstances surrounding the controlled drug transaction established the informant's reliability and probable cause for the warrant.  In particular, the police strip-searched CI 539 before the transaction and found no drugs.  She was monitored continually from that time

until after she returned from Petitioner's trailer with a bindle of cocaine. Police

officers also listened to and recorded the transaction between CI 539 and

Petitioner. Therefore, revealing CI 539's motives or her criminal history would not

have undermined the legitimacy of core material supporting the search warrant.

*See Franks*, 438 U.S. at 171-72 (noting that if the warrant contains sufficient

content to support probable cause despite false statements or omitted facts, further

proceedings are not required).

Accordingly, this claim will be denied.

### 3.    Disclosure of Unnamed Police Officers (Claims 2 & 9)

In a related claim, Petitioner alleges that he was denied his right to confront

and cross-examine the two police officers who searched CI 539 and her car before

the controlled transaction. The prosecutor indicated that providing the identity of

at least one of the officers would "pinpoint the identity of the confidential

informant." *State's Lodging A-6*, p. 251. The informer's privilege is not limited to

withholding just the informant's name, but also extends to all information that may

tend to reveal his or her identity. *See Napier*, 436 F.3d at 1136. This information

falls within the scope of the privilege.

Moreover, Petitioner did not show a significant need for the identities of two

officers who were tangentially involved in the controlled drug transaction. The

**Memorandum Decision and Order - 15**

events leading up to the delivery of cocaine had no relevance to the issue of Petitioner's guilt or innocence on the possession charges.  With respect to pretrial suppression issues, Petitioner failed to submit any evidence in state court to show that CI 539 was not searched or monitored in the manner that had been reported, or that any police officers were lying about that particular aspect of the transaction. As a result, Petitioner has not demonstrated that the state court committed a reversible constitutional error in permitting the State to shield the identities of these officers.

4.    Ineffective Assistance of Counsel (Claim 10)

Continuing with the same theme, Petitioner claims that his trial counsel was ineffective in failing to request that the trial court conduct an in camera examination to test the veracity of the informants and the unnamed officers.  He also claims that counsel was ineffective in failing to argue on appeal that such a hearing should have been held.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set out the proper test to be applied to claims alleging constitutionally inadequate representation.  To succeed on such a claim, the petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that the petitioner was prejudiced thereby.  *Id.* at

**Memorandum Decision and Order - 16**

684.  Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id*. at 684, 694.  The *Strickland* standard applies to claims of ineffective assistance of counsel on direct appeal.  *See Smith v. Robbins*, 528 U.S. 259, 286 (2000).

Here, the Idaho Court of Appeals applied *Strickland* and determined that Petitioner could not show prejudice from any of counsel's alleged errors. *Fairchild II*, 912 P.2d at 317.  In particular, while it is true that a defendant may request the trial court to examine in camera the evidentiary basis supporting the State's invocation of the informer's privilege, *see* Idaho Rule of Evidence 509(c)(3), the Idaho Court of Appeals determined that Petitioner did not establish how such a hearing would have materially benefitted him in this case.  *Fairchild II*, 912 P.2d at 685-86.  This Court agrees.  An in camera hearing was not necessary to question individuals who did not possess relevant evidence on the charges of drug possession.

Additionally, such a procedure would not have helped Petitioner his quest to undermine the validity of the search warrant.  Even if some of Petitioner's allegations about CI 539's background were exposed and found to be true by the trial court, probable cause for the search warrant would have still existed.  Further,

**Memorandum Decision and Order - 17**

Petitioner has not indicated what, precisely, he believes would have been revealed from the two unnamed officers that may have been relevant to suppression issues.

For similar reasons, Petitioner has not shown that there is a reasonable probability that had counsel claimed on direct appeal that an in camera hearing should have been held, the appellate court would have found reversible error. *See Smith*, 528 U.S. at 286. Consequently, Petitioner was not deprived of his constitutional right to the effective assistance of counsel, either at trial or on appeal, on this ground.

5.    <u>Lack of a Full and Fair Suppression Hearing (Claim 3)</u>

Petitioner next alleges that he was denied his due process right to a full and fair suppression hearing on his Fourth Amendment claims.

On its face, the record reveals that Petitioner had many opportunities to litigate suppression issues in state court. He filed three motions to suppress, multiple offers of proof, and was provided a pretrial evidentiary hearing at which he examined and cross-examined witnesses. The trial court issued several rulings on the merits of Petitioner's claims. Petitioner also fully briefed the suppression issues on direct appeal, and the Idaho Court of Appeals likewise rejected those claims on the merits. To the extent that Petitioner argues that he did not receive a fair opportunity to litigate these issues because the State did not disclose the

**Memorandum Decision and Order - 18**

confidential informants or certain police officers, that argument fails for the reasons discussed in the previous sections.

The heart of Petitioner's claim instead appears to be that he should have been granted a continuance of the suppression hearing so that his retained expert could test the physical evidence.  To rise to a due process violation, the denial of a requested continuance must amount to an unreasonable and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  The trial court concluded that Petitioner's counsel may have been dilatory in submitting his request to test the evidence, and it exercised its discretion not to continue the hearing.  *Fairchild I*, 829 P.2d at 968. Petitioner has not explained how this decision was unreasonable and arbitrary or, more importantly, in what way he was prejudiced, and this claim will be denied.

6.   Failure to Suppress Evidence (Claim 4)

Petitioner also brings a substantive claim that the trial court erred, on several different grounds, when it failed to suppress evidence allegedly taken in violation of the Fourth Amendment.  In *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), the Supreme Court held that Fourth Amendment claims generally do not offer relief in federal habeas corpus actions if the petitioner had a full and fair opportunity to develop the issues in state court.  Because this Court has now determined that

**Memorandum Decision and Order - 19**

Petitioner had such an opportunity, the Court will dismiss this claim as not cognizable under *Powell*.

       7.    <u>Cruel and Unusual Punishment (Claim 5)</u>

      As a final claim, Petitioner alleges that his sentences violate the Eighth Amendment's prohibition on cruel and unusual punishment.  The state district court sentenced him to thirty-five years in prison, with twelve years fixed, and imposed a $25,000 fine upon his conviction for possession of cocaine with the intent to deliver.  The court sentenced Petitioner to five years fixed for possession of marijuana and fined him $10,000.  The prison sentences were ordered to run concurrently.

      The Eighth Amendment contains a narrow principle that a sentence cannot be grossly disproportionate to the offense.  *Ewing v. California*, 538 U.S. 11, 20 (2003) (*citing Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  The Supreme Court has held that the requirement of sentencing proportionality is clearly established federal law, even in non-capital cases, but that "the precise contours [of the rule] are unclear," and an Eighth Amendment violation will be found "only in the 'exceedingly rare' and 'extreme' case."  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (citing *Harmelin*, 501 U.S. at 1001)(Kennedy, J., concurring in part and concurring in

**Memorandum Decision and Order - 20**

judgment)).

This is not the type of rare or extreme case that *Andrade* anticipates. There was overwhelming evidence that Petitioner was deeply immersed in the drug trade. He was found in the possession of large quantities of drugs, paraphernalia, packaging material, tally sheets, records, cash, weapons, and other items showing ownership and residency. He had intimidated and threatened other individuals while the criminal matter was pending. The state court judge was rightly concerned that Petitioner was a large-scale drug dealer who posed a continuing threat to society, and the sentences that he imposed accurately reflect that concern. *See Harmelin v. Michigan*, 501 U.S. 957, 961 (1991) (refusing to find that a sentence of life without the possibility of parole for possession of 672 grams of cocaine violated the Eighth Amendment).

Petitioner has failed to raise an inference of gross disproportionality, and his Eighth Amendment claim will be denied.

## CONCLUSION

The Court has carefully reviewed the pleadings, the briefing, and the state court record. For the reasons set forth above, the Court has determined that there are no genuine issues of material fact to resolve, and that Respondent is entitled to judgment as a matter of law.

**Memorandum Decision and Order - 21**

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 73) is GRANTED.

IT IS FURTHER ORDERED that Claims 1, 2, 3, 5, 9, and 10 in the Petition for Writ of Habeas Corpus are DENIED.  Claim 4 is DISMISSED as not stating a claim upon which relief may be granted.

IT IS FURTHER ORDERED that this cause of action is DISMISSED with prejudice.

DATED:  **August 30, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 22**